**UNITED STATES of America, Appellee,**

v.

**Roy FRIEBERGER, Appellant.**

No. 93–3036.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1994.

Decided July 8, 1994.

Howard A. Shalowitz, Clayton, MO, argued, for appellant.

John J. Ware, St. Louis, MO, argued, for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and ALSOP,* Senior District Judge.

BOWMAN, Circuit Judge.

Roy Frieberger[1] appeals his 132–month sentence imposed by the District Court[2] after he entered an unconditional guilty plea to one count of conspiracy to distribute more than 100 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a) and 846 (1988). We affirm.

## I.

In February 1993, Frieberger was arrested for his participation in a methamphetamine distribution ring. On March 5, 1993, Frieberger was indicted, in one count of a multi-count, multi-defendant indictment, for conspiring to distribute more than 100 grams of a mixture or substance containing a detectable amount of methamphetamine. After filing several pretrial motions, including a motion to suppress evidence and statements, all of which a magistrate judge[3] recom-

---

* The HONORABLE DONALD D. ALSOP, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. In the indictment, Presentence Report, and the judgment of the District Court, Appellant's name is spelled FRIEBERGER. On appeal, both Appellant and the government spell Appellant's name FREIBERGER. We have retained the spelling used by the District Court.

2. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

3. The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

mended be denied, Frieberger entered his unconditional guilty plea.[4]

The Presentence Report (PSR) calculated Frieberger's total offense level as 32 and placed him in criminal history category V based on a total of ten criminal history points. Frieberger filed written objections to the calculation of both the offense level and the criminal history category and renewed these objections at his sentencing hearing.

The District Court, after hearing from Frieberger and the government and after taking testimony from the DEA agent who interviewed Frieberger following his arrest, determined that Frieberger's total offense level was 32. This determination reflected a three-level enhancement for being a manager or supervisor in a criminal activity involving five or more participants, U.S.S.G. § 3B1.1(b)[5], and a three-level reduction for acceptance of responsibility, *id.* § 3E1.1.

The District Court also determined that Frieberger's prior criminal record placed him in criminal history category V, resulting in a sentencing range of from 188 to 235 months. The government filed a motion for a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1, p.s. The District Court granted the government's motion and sentenced Frieberger to 132 months of imprisonment, four years of supervised release, and a special assessment of $50.00. Frieberger then filed a timely notice of appeal.

■ In his appeal, Frieberger challenges his sentence on a variety of grounds. We review the District Court's application of the Guidelines de novo, and its factual determinations under the clearly erroneous standard. *United States v. Kelly,* 989 F.2d 980, 985 (8th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 206, 126 L.Ed.2d 163 (1993).

II.

Frieberger first argues that the District Court improperly made a finding regarding his level of culpability in the conspiracy without hearing any evidence on this disputed fact issue. Having carefully reviewed the sentencing transcript, we are convinced that the District Court did not foreclose the introduction of evidence on this issue. It is true, as Frieberger argues, that at one point in the discourse between the court and Frieberger's counsel on the culpability issue, the court stated, "In regard to Mr. Freiberger's [sic] level of culpability the court having reviewed the report . . . would put Mr. Freiberger [sic] and Mr. Reedy[6] in the same level of culpability. That would be the finding of the Court." Transcript of Sentencing Hearing at 6. However, Frieberger's counsel persisted with his argument that, because the culpability assessments would affect the sentence, the court should hear evidence on the issue. The court then agreed that the portion of the PSR dealing with Frieberger's level of culpability was still "in issue," *id.* at 8, and eventually heard evidence from DEA Agent Brauer, who interviewed Frieberger after his arrest, before making the culpability finding and before assessing the section 3B1.1 enhancement, *see id.* at 53–55. Although Frieberger was not precluded from submitting evidence, he proffered none. Thus, Frieberger's contentions are not borne out by the record.

■ Frieberger next argues that the testimony of Agent Brauer, which provided much of the factual support for the section 3B1.1 enhancement, was based on statements made by Frieberger that were obtained in violation of his Fifth Amendment right against self-incrimination. This argument is not properly before us. Prior to pleading guilty, Frieberger filed a pretrial motion seeking suppression of the inculpatory statements he made to Agent Brauer. The magistrate judge recommended that this motion be denied. Frieberger then proceeded to enter an unconditional guilty plea.[7] By doing so, Frieberger

---

4. Following Frieberger's guilty plea, the District Court entered an order denying all pending motions as moot.

5. All Guidelines references are to the November 1992 version.

6. Gale Reedy is an indicted coconspirator.

7. Under Federal Rule of Criminal Procedure 11(a)(2), a defendant, with the approval of the court and the consent of the government, may enter a conditional plea of guilty reserving for

waived any claims he may have had that the admission into evidence of his statements to Agent Brauer would violate his privilege against self-incrimination, and thus he is precluded from raising such claims in this appeal. *See Smith v. United States*, 876 F.2d 655, 657 (8th Cir.), *cert. denied*, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989).

■ Alternatively, Frieberger argues that the testimony of Agent Brauer is insufficient evidence to sustain the three-level enhancement under section 3B1.1. The government bears the burden of proving by a preponderance of the evidence that Frieberger's activities warrant an enhancement based on his role in the offense. *See United States v. Monroe*, 978 F.2d 433, 435 (8th Cir.1992); *United States v. Lincoln*, 956 F.2d 1465, 1475 (8th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 259, 121 L.Ed.2d 190 (1992). Determination of a defendant's role in the offense for the purpose of sentence enhancement is a factual finding that will not be reversed unless it is clearly erroneous. *Lincoln*, 956 F.2d at 1475.

■ A review of the stipulation of facts relative to sentencing and the testimony of Agent Brauer reveals ample evidence from which the court properly could find that Frieberger was acting as a manager or supervisor in the drug conspiracy to which he pleaded guilty. Based on the stipulation, the District Court found that Frieberger participated in the conspiracy with June Schamel, Gale Reedy, David Linzmeyer, Martin Hernandez, Frieberger's sister, and others. Transcript of Sentencing Hearing at 54. Frieberger admitted to distributing methamphetamine directly to a codefendant and to others. He also admitted that, after he was convicted of a federal drug charge, he introduced his sister to codefendant Gale Reedy so that his sister could supply Reedy with methamphetamine and Reedy could complete the chain of distribution by selling methamphetamine to Frieberger's contacts. Frieberger acknowledged that he received compensation from Reedy for arranging this system of distribution. This evidence is suffi-

cient to support the District Court's finding that Frieberger acted as a manager or supervisor in a criminal activity involving five or more participants, and thus the finding is not clearly erroneous.

### III.

Frieberger also challenges the District Court's calculation of his criminal history category. He first argues that the District Court should be collaterally estopped from assessing one point each for three prior offenses because another federal district court, in sentencing Frieberger on a previous drug conviction, concluded that no points should be assessed for the three offenses. We find this argument void of merit, for Frieberger misrepresents the prior district court's determination.

■ In the previous sentencing proceeding, the district court assessed a criminal history point for each of the three offenses here at issue. That court then found that the resulting category significantly over-represented Frieberger's criminal history and departed downward sua sponte pursuant to U.S.S.G. § 4A1.3, p.s. The District Court here assessed exactly the same number of points as did the previous district court and only differed in declining to departing downward sua sponte under section 4A1.3, a decision that is not surprising, as Frieberger by this time had committed yet another offense. We conclude that the District Court did not err in assessing the three criminal history points challenged by Frieberger.

Frieberger next argues that the District Court erred by assessing two criminal history points, rather than only one, under U.S.S.G. § 4A1.1 for a prior federal drug conviction because the sentence imposed was not a "prior sentence of imprisonment." U.S.S.G. § 4A1.1(b). In Frieberger's prior drug conviction, the district court sentenced him to a one-year suspended sentence and two years of probation with a special condition of six months of work release in a "jail-type institution."[8] *United States v. Freiber-*

---

appellate review adverse rulings on pretrial motions.

**8.** It is unclear from the record and from oral argument where Frieberger spent his off-duty

*ger,* No. 91–219Cr(4), judgment at 2 (E.D.Mo. Aug. 7, 1992).

■ We need not decide whether this sentence constituted a "prior sentence of imprisonment" because Frieberger's probation was revoked and the suspension of his one-year sentence was lifted before Frieberger was sentenced by the District Court in the present case. Under the Guidelines, two criminal history points are added for "each prior sentence of imprisonment of at least sixty days." U.S.S.G. § 4A1.1(b). A "prior sentence" is one "imposed prior to sentencing on the instant offense." *Id.* § 4A1.2, comment. (n. 1). Thus, in the circumstances of this case, Frieberger's one-year sentence became a prior sentence to which section 4A1.1(b) properly applies. *See also id.* § 4A1.2(k)(1) (directing the sentencing court to add any term of imprisonment imposed upon revocation of probation to the original term of imprisonment when computing criminal history points).

Frieberger also argues that the District Court improperly assessed an additional criminal history point under U.S.S.G. § 4A1.1(e) for committing the instant offense less than two years following his release from custody on the federal drug conviction discussed above. Frieberger again argues that the prior drug conviction did not involve confinement. He further contends that the one-point assessment amounts to double counting as he also received a two-point assessment under section 4A1.1(d) for committing the instant offense while on probation. We are unpersuaded. The resolution of the preceding issue disposes of Frieberger's argument that his prior sentence did not involve confinement, and the Guidelines take into account Frieberger's double-counting argument. U.S.S.G. § 4A1.1(e); *id.* comment. (n. 5) ("However, if two points are added under § 4A1.1(d), only one point is added under § 4A1.1(e)."). Frieberger's argument therefore must fail.

### IV.

Finally, Frieberger raises constitutional issues, essentially arguing that his sentence violates the Eighth Amendment because it is disproportionate to his crime and that the Guidelines violate the Due Process Clause of the Fifth Amendment by punishing methamphetamine distribution more severely than other drug crimes. These arguments lack merit.

■ The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 3008, 77 L.Ed.2d 637 (1983)). We narrowly review a sentence to determine whether it is grossly disproportionate. *United States v. Morse,* 983 F.2d 851, 855 (8th Cir.1993). Comparing Frieberger's offense to the crime committed in *Harmelin,* possession of 672 grams of cocaine for which the defendant received a sentence of life imprisonment without the possibility of parole, we cannot say that Frieberger's 132–month sentence is grossly disproportionate to his crime of conspiracy to distribute more than 100 grams of a mixture or substance containing a detectible amount of methamphetamine.[9] We note that this sentence is well within the maximum term of forty years of imprisonment authorized by the statute applicable to Frieberger's offense. *See* 21 U.S.C. § 841(b)(1)(B)(viii) (1988).

■ As to Frieberger's Fifth Amendment claim, we do not stop to inquire whether the Guidelines punish methamphetamine traffickers more severely than other drug traffickers. Even if that is so, it does not render the Guidelines unconstitutional with respect to methamphetamine offenses. *See United States v. Simms,* 18 F.3d 588, 595 (8th Cir.1994) (reiterating that the 100:1 disparity in guidelines sentences for cocaine base and for cocaine powder does not violate

---

hours while completing the work-release special condition of his probation.

**9.** For sentencing purposes, the District Court found, based on the PSR, that Frieberger was

responsible for one to three kilograms of methamphetamine. Frieberger does not contest this finding.

the Constitution). Absent classifications based on race or some other forbidden or suspect ground, legislative decisions of the sort here in question—how severely to punish a particular class of drug-trafficking crimes—need only have a rational basis to survive a challenge that they violate the substantive component of the Due Process Clause of the Fifth Amendment. Frieberger offers nothing from which we could conclude that the punishments chosen for methamphetamine offenses lack such a basis.

## V.

For the reasons stated, the sentence imposed by the District Court is affirmed.